At July term, 1824, notice was given to the defendants that a. motion would be made to amend the judgment; upon this motion the court of common pleas directed the judgment of April term, 1820, to be amended, by striking out the words "*to be discharged by the payment of,*" and inserting in their place, "*and that execution issue thereon for.*" To reverse this order of amendment, the *certiorari* was sued out, and the decision adjourned to this court by the supreme court of Pickaway county.

By the COURT:

The order of the common pleas of Pickaway county must be reversed. The court of common pleas have no authority to amend a final judgment at a term subsequent to that in which it is rendered, except in mere matter of form. The alteration made in this judgment was in a material and substantial, and not a formal circumstance.

---

**376]      \*STEPHEN McDOUGAL AND OTHERS *v.* ALEXANDER HOLMES AND OTHERS.**

*Banks—Assignees—Payments.*

THE defendant, Holmes, was president of the Granville Alexandrian Society, which had for some years issued bills, discounted notes, and transacted business as a bank. The complainants, having become borrowers, gave their joint note to Holmes, who received it for account of the society. In October, 1817, judgment was rendered on this note, and upon this judgment several payments were made to the society. In May, 1820, the judgment was assigned for the balance due upon it to the other defendants, who refused to receive the paper of the bank in discharge of it. The bill was prosecuted to compel them to receive it, charging that the assignment was only in trust for the bank, and claiming that if it were not, still the assignees were bound to receive the paper in payment.

The answers denied that the assignment was a trust, and stated that the assignees were the real owners; and upon this state of fact the cause was adjourned here from Licking county for decision.

386

EWING, for complainants:

We maintain: 1. That on the 5th day of May, 1820, previous to the assignment of the judgment to Granger, the complainants had a right to discharge the judgment by the payment of its amount in notes of the Granville Alexandrian Society; and 2. That this right was not divested by the assignment.

1. Bank notes have for many years past been almost the only circulating medium of our country. They are in law and in fact considered as money; they pass by a devise of all the testator's moneys, and a tender of bank notes in payment of a debt is good, unless specially excepted to by the creditor. . And on principles of equity at least, the banker has no right to object to his own notes where tendered in discharge of a judgment, which was founded on a contract for the loan of the same identical money, He charges his debtor on a count for money lent; the defendant can not *gainsay the fact, that the bank notes which he bor- [377 rowed were money; much less, then, should the banker who loaned · it as money, who pledges his faith that he will redeem it as money, be permitted to question it when tendered to him in discharge of a debt of which it was the subject.

Our statute of the 5th of February, 1819, merely settles what I conceive to have been a clear principle of natural, if not of judicial equity, before its enactment. 17 S. L. 128, 129.

It applies as well to judgments which were rendered before its enactment, and which were at that time unsatisfied as to judgments which should be thereafter recovered. The expression of the act "*in all suits or actions prosecuted,*". is as general as language can make it; the passive participle, "*prosecuted,*" which is here the operative word, has no reference to time, but depends entirely upon the tense of the auxiliary verb, which may be connected with it, to fix its relation. Standing alone, it applies alike to the past, the present, and the future. Had the legislature intended to confine this proviso to future judgments, the appropriate expression ("*which shall be hereafter prosecuted* ") would hardly have escaped them; but if it were intended to extend to all cases which had been, and which should thereafter be prosecuted, they have used appropriate language to convey their meaning. The single word "*prosecuted,*" is entirely equivalent to the paraphrase *which shall have been, or which may hereafter be prosecuted.* This construction is strengthened by the general expression in the fifth line of the

proviso: "The sheriff upon *any execution* in his hands," etc. Here again, had it been the intent of the legislature to limit this proviso, such limitation might have been aptly introduced by adding the words, "issued on any judgment which may hereafter be recovered." But the expressions are general, and the act seems to have been intended to apply to *all cases* where an individual was indebted to a bank, whether the debt were reduced to judgment or not, and that its object was to enable the debtor to discharge such debt in that kind of money which was the subject of the original contract. Nor do I apprehend that this provision of the statute impairs in anywise the validity of private contracts. It merely gives a **378]** set-off where it could not otherwise have *been had without a suit at law, or application in chancery. On the whole we think ourselves safe in the conclusion, that at any time before the assignment to Granger, the judgment debtors had a right to satisfy that judgment by paying its amount in notes on the Granville Bank, and that such notes were a legal tender to the sheriff holding an execution on such judgment.

2. Was this right impaired by the assignment of the judgment?

The transfer of an instrument negotiable in law conveys no greater interest than was vested in the assignor. If the instrument or right be not negotiable, the equity, only, of the assignor is vested in the asssignee—and what was the right of the bank by virtue of this judgment? To collect on execution the amount of the judgment in their own notes, which were worth twenty-five cents on the dollar; they could transfer nothing more to their assignee.

Perhaps, by the mode pointed out in the third section of the act, this judgment might have been transferred and free from the privileges claimed under this proviso, but that mode has not been pursued. Indeed, the regulation under which creditors are allowed to attach the credits of the bank, negative, by strong implication, the rights claimed by the defendants under this voluntary assignment. It is specially provided, that the *directors, or those who have been directors, shall be first proceeded against.* Consequently if they have sufficient funds of the bank in their hands, the process would not interfere with the mutual rights of the bank and their other debtors. But to evade the effects of this statute, a board of directors, who were largely indebted to the bank, would doubtless be very ready to assign the debts of others to a creditor who should threaten them with an attachment, that they might

themselves make payment of their individual debts in their own depreciated paper. Against this and the like abuse, the law was intended to guard.

GODDARD, for the defendants:

The complainants ask the court to exercise the novel jurisdiction of offsetting a simple contract debt due them from the person in whose name the judgment is rendered against a *bona fide* assignee of the judgment, and this *without any suggestion [379 of the insolvency of the party indebted to them.

Courts of law sometimes set off judgments against each other, in the exercise of an equitable jurisdiction, and in analogy to the statute of set-offs. But the case presented must always show, not only a judgment in favor of each party, but in the same right. Chief Justice De Grey, in the case of Barker v. Braham, is particularly guarded in his language: "I am for allowing the present motion, but desire it may be remembered that this is the case of one judgment against another, both in the same right, and must be distinguished from setting off private debts, not in suit, and upon which no judgment has been obtained." Courts of equity have heretofore exercised no other or greater jurisdiction on the subject of set-off than courts of law, with one single exception; and that is in the case of the bankruptcy of a party in England; they set off joint and separate debts, which can not be done at law. 2 Bl. 860.

The complainant's case is not strengthened by the fact that the judgment was rendered in favor of a banking company. The statute on this subject relied upon was intended to compel companies, whose notes had passed as currency, to receive these notes in payment of debts due to themselves. And if we confine the operation of the act to this object, it is a remedial and highly beneficial statute. But extend it as the complainants require—permit a debtor of the bank to pay its *bona fide* creditors, to whom it has assigned the debtor's note or judgment (and it matters not which in equity) in notes of the bank, and the statute is rendered productive of unjust and inconvenient consequences.

Indeed, the legislature intended to guard against this injustice. "In all suits prosecuted by a bank or banker, or those claiming as their assignees or under them, *in any way for their use or benefit.*" And again: "If such bank or banker, their or his assignee, or other

person, *suing in trust for the use of such bank or banker*, shall re-
fuse," etc., expressly confining the operation of the statute to those
assignees who, by covin, should prosecute for the use of the bank,
and intentionally saving to *bona fide* creditors of the bank the
right to receive assignments of their claims against other
380] *persons, and to sue them, and collect them in specie. The
statute did not intend to prohibit a banking company from paying
its debts with the debts due to it, but it intended to prohibit
speculation and knavery in the officers and managers of those in-
stitutions.

The complainants, perhaps, meet us here by saying that this
suit was confessedly prosecuted by Holmes for the use of the
bank, and therefore comes directly within the statute. The force
of this observation is completely met by a comparison of dates.
The judgment was rendered 8th October, 1817, and amended 13th
July, 1818. The statute was passed 5th February, 1819, and this
section took effect 4th July, 1819. The assignment to Granger
was made 5th May, 1820, and the tender of Granville paper the
17th February, 1821. So that the complainants can hardly be said
to come within the *letter* of the statute at all; and the equity of
the statute surely saves the right of a *bona fide* assignee of a *judg-
ment*, as well as of a note, bill, or bond.

On the whole, the defendants seem to have given the true con-
struction to this statute; while the judgment stood for the use and
benefit of the bank, the paper of that bank was received in pay-
ment. But when the complaints become negligent, and the bank
being pressed for payment by a *bona fide* creditor, they assigned
the judgment fairly and without fraud to that creditor, the paper
of the bank was no longer received, and could not be without de-
feating the object of the statute.

For opinion of the court, see the case of *Pancoast v.* Ruffin and
others, post.